Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| EL PUEBLO DE PUERTO RICO<br><br>Peticionario<br><br>v.<br><br>AARON VICK<br>JUAN MALDONADO DE JESÚS<br><br>Recurridos | KLCE202400148 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.<br>K VP2021-2767<br>y otros<br>K VP2022-1281-1287<br><br>Sobre:<br>Arts. Tentativa 202, 217, 254 y 212 CP |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Grana Martínez y el Juez Adames Soto

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 7 de febrero de 2024.

I.

Transcurridos múltiples incidentes en el trámite procesal criminal seguido contra los señores Aaron Vick y Juan Maldonado De Jesús por violación a los artículos 202, 211, 212, 217 y 254 del Código Penal en grado de tentativa, el 8 de junio de 2022 la representación legal de Maldonado De Jesús envió una carta a los Fiscales Especiales Independientes (FEI) solicitando la entrega de prueba exculpatoria. El 24 de junio de 2022, mediante otra misiva, se unió a la petición la representación legal del co-imputado Aaron Vick.

El 28 de junio de 2022, los Fiscales Especiales Independientes propusieron al Tribunal que examinara en cámara el *Informe de Investigación Preliminar* (Informe) rendido por el Departamento de Justicia. Acordado por las partes y con la necesaria anuencia del Tribunal, el 11 de agosto de 2022 el aludido Informe se entregó en un sobre sellado en corte abierta para su examen.

Así las cosas, el 29 de agosto de 2022, el Tribunal de Primera Instancia concluyó que el Informe debía ser entregado a la defensa por contener

información exculpatoria. El Foro *a quo* notificó su decisión en corte abierta y ordenó la entrega del Informe a los imputados. El 31 agosto de 2022 el Ministerio Público solicitó reconsideración. El 1 de septiembre de 2022, el Tribunal notificó a las partes *Resolución* fechada 31 de agosto de 2022, consignando por escrito su Orden de entregar el Informe anunciada el 29 de agosto de 2022 y, otra *Resolución,* fechada 1 de septiembre de 2022, resolviendo que el Panel sobre el Fiscal Especial Independiente (PFEI) no tenía jurisdicción sobre los imputados y ordenaba la desestimación de todos cargos presentados.

El 6 de septiembre de 2022, el Tribunal de Primera Instancia emitió *Resolución* mediante la cual declaró "académica" la *Moción de Reconsideración* presentada por el Ministerio Público respecto a la Orden de entregar el Informe. Llegada la controversia ante este Foro intermedio de apelaciones, cuestionando tanto la desestimación de los cargos por falta de jurisdicción del Fiscal Especial Independiente, así como la Orden de entrega del Informe, confirmamos el dictamen desestimatorio del Tribunal de Primera Instancia. Consecuente con dicho resultado, consideremos entonces, innecesario expresarnos sobre la corrección de la Orden de la entrega del Informe.

Posteriormente, nuestra más Alta Curia Judicial local, revocó nuestra decisión tras concluir que la oficina del PFEI si tenía jurisdicción sobre los imputados. Devuelto el caso al Foro de origen, el 2 de febrero de 2024 los imputados solicitaron nuevamente la entrega del Informe. Alegaron que la determinación emitida el 29 de agosto de 2022 ordenando la entrega del Informe era "Ley del caso". El Estado se opuso expresando que no aplicaba la doctrina de la ley del caso, pues el caso había sido totalmente desestimado tras expedirse la Orden. Añadió, que, en la *Resolución* resolviendo la *Moción de la Reconsideración* presentada por el Estado el 31 de agosto de 2022, el Juez había decretado académica la controversia.

Escuchadas las partes, el Tribunal de Primera Instancia ordenó al Estado entregar el Informe en el periodo de cinco (5) días, a vencer el 7 de febrero de 2004. Ese mismo día 2 de febrero de 2024, el Estado presentó una

*Moción de Reconsideración.* **Sin contar con la *Resolución* o *Minuta* de la vista recogiendo por escrito la recurrida Orden y ni tan siquiera haberse resuelto la *Moción de Reconsideración* incoada ante el Foro primario,** el 6 de febrero de 2024 el Estado recurrió ante nos mediante *PETICIÓN DE CERTIORARI*[1] acompañada de *MOCIÓN URGENTE EN AUXILIO DE JURISDICCIÓN.*

En el ejercicio de la facultad discrecional que nos concede la Regla 7 (B)(5) de nuestro Reglamento,[2] preterimos todo trámite ulterior y, por los fundamentos que expondremos a continuación, *desestimamos* el presente recurso. Además de prematuro, el dictamen que se pretende revisar no es revisable. Elaboremos.

## II.

### A.

Sabido es que, el término para acudir en *certiorari* comienza dependiendo de la forma en que se emitió la determinación. Por su implicación sobre el cómputo para recurrir a este Tribunal de Apelaciones y que podamos asumir jurisdicción para atender el recurso, la parte se considera debidamente notificada en dos instancias distintas. Si el Tribunal de Primera Instancia emite su decisión en corte abierta en presencia de la parte, y la parte le informa a dicho tribunal su intención de recurrir y pide que se notifique la *minuta*, el término para acudir en *certiorari* comienza desde que se notifique la *minuta.*

Por el contrario, en casos excepcionales en que la parte no informa al Foro primario en ese momento su intención de recurrir y posteriormente

---

[1] Plantea:
SEÑALAMIENTO DE ERRORES.
ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA DE SAN JUAN AL DETERMINAR QUE EL INFORME DE INVESTIGACIÓN PRELIMINAR CONTIENE PRUEBA EXCULPATORIA Y ORDENAR SU ENTREGA A LOS IMPUTADOS DE EPÍGRAFE SIN ESPECIFICAR A QUE PARTE O DOCUMENTACIÓN DEL INFORME SE REFIERE.
[2] La Regla 7(B)(5) dispone:
El Tribunal de Apelaciones tendrá la facultad para prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos en cualquier caso ante su consideración, con el propósito de lograr su más justo y eficiente despacho y proveer el más amplio acceso al tribunal, de forma que no se impida impartir justicia apelativa a los ciudadanos. 4 LPRA Ap. XXII-B, R. 7 (B)(5).

decide acudir en revisión, la fecha será la de la transcripción de la *minuta*.[3] En cualquier caso, la determinación interlocutoria tiene que estar firmada por el juez o jueza que la emitió para que pueda constar válidamente en la *minuta* del tribunal.[4] Además, el término para solicitar revisión de dictamen interlocutorio del foro primario recogido en la transcripción de una *minuta* que no fue firmado por el juez o la jueza que la emitió, comienza a decursar a partir de la fecha de la notificación oficial de la *minuta* a las partes, aprobada con la firma del juez o jueza que emitió el dictamen.

En este caso, el Estado peticionario admite claramente que no cuenta con una resolución escrita. Tampoco surge que le haya solicitado al foro primario que le notificase inmediatamente la *minuta* de la vista recogiendo su determinación. Ante ello, no existe un dictamen válido del que la parte pueda recurrir ante nos.

B.

En lugar de solicitar que se le notificase la *minuta*, el Estado optó por solicitar a dicho Foro, mediante moción posteriormente incoada, que reconsiderara su dictamen. A esta fecha dicha *Moción* permanece irresuelta, por lo que carecemos de jurisdicción para atender el recurso incoado. Nos explicamos.

En el ámbito procedimental penal, la Regla 194 de Procedimiento Criminal,[5] rectora de la moción o solicitud de reconsideración, establece, que "[s]i cualquier parte solicitare la reconsideración de la sentencia dentro del término improrrogable de quince (15) días desde que la sentencia fue dictada, el término para radicar el escrito de apelación **o de *certiorari* quedará interrumpido y el mismo comenzará a partir de la fecha en que se archive en autos la notificación de la resolución del tribunal adjudicando la moción de reconsideración**".

---

[3] Véase: Regla 194 de Procedimiento Criminal, 34 LPRA Ap. II, R. 194; Además, véase: *Pueblo* v. *Rodríguez Martínez*, 167 DPR 318 (2006); *Pueblo* v. *Rodríguez Ruiz*, 157 DPR 288 (2002).
[4] *Pueblo* v. *Ríos Nieves*, 209 DPR 264 (2022).
[5] 34 LPRA Ap. II R. 194.

Una moción de reconsideración en los procesos criminales, igual que en los de naturaleza civil y derecho administrativo, constituye un mecanismo procesal al alcance de una parte afectada, ya sea por una resolución, orden interlocutoria, sentencia final o dictamen posterior, mediante la cual solicita al tribunal adjudicador que modifique o deje sin efecto el dictamen en controversia.[6]

Al examinar la precitada Regla 194, es claro el efecto de una presentación de solicitud de reconsideración de una sentencia dentro del término improrrogable de quince (15) días respecto al término para presentar un recurso de *certiorari* o apelación ante el Tribunal de Apelaciones. Si se solicita la reconsideración sobre una sentencia emitida por el Tribunal de Primera Instancia, ello interrumpe el término para acudir ante el Tribunal de Apelaciones mediante recurso de apelación o de *certiorari*. Dicho término comenzará a transcurrir nuevamente **a partir del archivo en autos de la notificación de la resolución del tribunal mediante la cual adjudicó la moción de reconsideración.**

De hecho, al interpretar esta Regla, el Tribunal Supremo en *Pueblo* v. *Román Feliciano*,[7] aclaró que, la oportuna moción de reconsideración sobre **un dictamen interlocutorio durante un proceso penal** interrumpe el término para acudir mediante *certiorari* ante el Foro Intermedio Apelativo. Al subsanar el vacío reglamentario sobre el término que disponen las partes afectadas para solicitarle al Tribunal de Primera Instancia la reconsideración de alguna orden o resolución interlocutoria en un proceso penal, nuestra más Alta Curia resolvió fijar en quince (15) días dicho término y que fuese de estricto cumplimiento. Llegó a tal conclusión **al evaluar las disposiciones reglamentarias análogas en las Reglas de Procedimiento Civil de 2009 y en el Proyecto de Reglas de Procedimiento Penal de diciembre de 2008**, **y en atención al principio de uniformidad entre reglas procesales** para

---

[6] *Dávila* v. *Collazo,* 50 DPR 497 (1936).
[7] 181 DPR 679 (2011).

adelantar los objetivos plasmados en la Ley de la Judicatura, Núm. 201 del 22 de agosto de 2003, y de una eficaz y eficiente administración de la justicia.

III.

Evidentemente, las normas expuestas nos obligan a *desestimar* el recurso. No habiendo un dictamen emitido conforme las exigencias legales y reglamentarias, la parte no puede acudir ante nos para su revisión. Peor aún, habiéndose incoado una *Moción de Reconsideración* para que el foro recurrido reevalúe el dictamen que se pretender revisar ante nos, torna prematuro el recurso privándonos de jurisdicción. Como hemos indicado, una moción de reconsideración como la presentada por el Estado peticionario, tiene el efecto de interrumpir el término para acudir ante nos y, por tanto, el presente recurso ha sido presentado prematuramente.

Como cuestión de justiciabilidad, un recurso prematuro priva de jurisdicción apelativa para considerarlo en sus méritos y, en derecho, procede su *desestimación.* Ni siquiera es posible conservar en nuestros archivos un recurso apelativo prematuro con el propósito de luego reactivarlo.[8] Como celosos guardianes de nuestra jurisdicción apelativa, no tenemos discreción ni autoridad en ley para asumirla, donde no la hay.[9] Concluimos, por tanto, que no tenemos jurisdicción como foro intermedio apelativo para considerar el recurso presentado, por ser prematuro y no ejecutable. Ante ello, el único curso decisorio a seguir es desestimarlo.[10]

IV.

Por los fundamentos de derecho antes expuestos, se *desestima* el recurso por falta de jurisdicción al ser prematuro.

Notifíquese inmediatamente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[8] *Pérez* v. *C.R. Jiménez, Inc.*, 148 DPR 153, 154 (1999).
[9] *Romero Barceló* v. *E.L.A.,* 169 DPR 460,470 (2006); *Morán* v. *Marti,* 165 DPR 356 (2005).
[10] *Pérez* v. *C.R. Jiménez, Inc.,* supra pág. 156.